# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH M. ANDERSON,<br><br>　　　　　　　　　Plaintiff,<br>v.<br>JAMES DZURENDA, *et al.*,<br><br>　　　　　　　　　Defendants. | 3:18-cv-00426-MMD-CBC<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

　　　　This case involves a civil rights action filed by Plaintiff Joseph M. Anderson ("Anderson") against forty current and former Nevada Department of Corrections ("NDOC") employees (collectively referred to as "Defendants"). Currently pending before the Court are two motions for temporary restraining order and preliminary injunction filed by Anderson. (ECF Nos. 19, 20, 63.)[2] Defendants filed oppositions to both motions (ECF Nos. 26, 69), and Anderson replied. (ECF Nos. 27, 74.) For the reasons stated below, the Court recommends Anderson's motions for temporary restraining order or preliminary injunction (ECF Nos. 19, 20, 63) be denied.

## I.　Factual Background

　　　　Anderson is an inmate in the custody of the NDOC, and is currently housed at Lovelock Correctional Center ("LCC") in Lovelock, Nevada. (ECF No. 23.) Anderson is a Wicca practitioner who practices his religion as a solitary practitioner rather than with a group of other Wiccans. (ECF No. 23.) As part of the Wicca religion, practitioners utilize certain religious objects. Access to religious objects is predicated upon Administrative Regulation

---

[1]　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]　ECF numbers 19 and 20 are identical.

-1-

1  ("AR") 810, which is entitled "Religious and Faith Group Activities and Programs." (*Id.*) In
2  pertinent part, AR 810 states "[g]roup items will not be kept by individuals. These items will
3  be kept in the group storage box . . . [p]ersonal religious items may ONLY be purchased
4  through Canteen . . . [and] inmates are permitted to display religious items . . . [and] have a
5  religious altar in their cells." (ECF No. 26-2 at pp. 4.)

6  Prior to the implementation of this iteration of AR 810, Anderson could purchase
7  religious objects directly from outside vendors.[3] (ECF No. 20.) The NDOC changed AR
8  810 on November 1, 2018, due to an incident at High Desert State Prison (HDSP). (ECF
9  No. 26.) At that time, an inmate ordered religious oils from an un-vetted outside vendor,
10 which were tested upon arrival to HDSP, and found to contain cocaine. (*Id.*) NDOC officials
11 discussed how to prevent further such security breaches and determined the best way was
12 for inmates to buy religious objects solely from the prison canteen, allowing NDOC officials
13 to vet vendors beforehand. (*Id.*) As a result, costs of some religious objects increased and
14 inmates have to submit requests to the chaplain for new objects to be added. (ECF Nos.
15 20, 26-2.)[4]

16 Anderson filed numerous grievances about the changes to AR 810. (ECF Nos. 19,
17 20, 23.) The grievance process is governed by AR 740 Inmate Grievance Procedure, which
18 provides grievances are to be filled out in quadruplicate. (ECF No. 26 at Ex. D, Ex. E.) The
19 fourth page is for the inmate to keep for their records and does not include a date stamp or
20 response. (*Id.*) The grievance coordinator records receipts, transmittals, actions and
21 responses on all grievances to NOTIS, an electronic database. (*Id.*)

22 Anderson did not receive a receipt for any of his grievances. (ECF No. 20.)

---

[3]  Anderson specifically lists the following vendors: Azuregreen; Isis Books and Gifts; and, San Francisco Herb and Natural Food. (ECF No. 20 at 2.)

[4]  Although Anderson raises allegations regarding both religious objects and access to religious grounds in his complaint (ECF No. 23), he only raises the allegations regarding religious objects and AR 740 in the pending motions. (ECF Nos. 19, 20, 63.)

Subsequently, his grievances were delayed, lost, or misplaced. (*Id.*) As a result, Anderson claims he was prejudiced in bringing this action. (ECF Nos. 20, 23.)

## II.  Procedural History

On November 13, 2018, Anderson submitted a first amended civil rights complaint pursuant to 42 U.S.C. § 1983. (ECF No. 23.) In the first amended complaint ("FAC"), Anderson asserted four claims for relief against Defendants. (*Id.*)

Pursuant to 28 U.S.C. § 1915A(a), the Court screened Anderson's FAC on November 26, 2018. (ECF No. 22.) The Court determined all of the following stated a cause of action: (1) the portion of Count I alleging a Fourteenth Amendment equal protection claim; (2) the portion of Count I alleging a First Amendment free exercise of religion claim; (3) the portion of Count I alleging a First Amendment retaliation claim; (4) the portion of Count I alleging a Fourteenth Amendment access to courts claim; (5) the portion of Count II alleging an Eighth Amendment deliberate indifference to a serious medical need claim; and, (6) the portions of Count II alleging First Amendment retaliation claims. (ECF No. 22.)

At issue in the instant motions for TRO or PI are the claims related to Anderson's rights under: (1) the Fourteenth Amendment equal protection clause; (2) the First Amendment free exercise clause; and, (3) the Fourteenth Amendment due process clause. (ECF Nos. 19, 20, 63.) Both motions argue AR 810 violates Anderson's rights under 42 U.S.C. § 2000cc, *et. seq.*, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and 42 U.S.C. § 1983 – specifically, violations of his First Amendment right to Free Exercise of his religion and his Fourteenth Amendment right to Equal Protection. (ECF Nos. 19, 20, 63.) Anderson alleges modifications to AR 810 place substantial burdens on his ability to practice his Wiccan faith by only allowing religious items to be purchased from the prison canteen or vetted sources, precluding three prior wholesalers and increasing the cost of religious items, such as oils and incense. (*Id.*)

Additionally, the motions argue Defendants failed to enforce NDOC Administrative Regulation ("AR") 740 when they did not provide Anderson with grievance receipts. (*Id.*)

This failure resulted in prejudice to Anderson in bringing the current action, violating his Fourteenth Amendment rights to Due Process. (*Id.*) Based on the foregoing, Anderson argues he is likely to succeed on the merits and will suffer irreparable harm if a temporary restraining order ("TRO") or preliminary injunction ("PI") are not granted. (*Id.*) Furthermore, he argues that granting a TRO or PI would be in the public interest and that the balance of equities favors him, thus satisfying all four necessary factors. (*Id.*)

In response, Defendants argue Anderson has failed to establish any of the four necessary factors for the imposition of a TRO or PI at this time. (ECF Nos. 26, 69.) As to Anderson's claims regarding AR 810, Defendants argue: (1) Anderson will not suffer irreparable harm as a result of the modifications because he can obtain the necessary religious objects and is not restricted from practicing his religion; (2) Anderson is not likely to succeed on the merits of either his equal protection claim or his free exercise claim because Defendants have a legitimate penological interest and they adopted the least restrictive means possible in implementing the modifications; and, (3) the balance of equities does not favor injunctive relief as it would adversely impact Defendants' ability to operate LCC. (*Id.*) As to Anderson's claims regarding AR 740, Defendants argue: (1) Anderson will not suffer irreparable harm if he does not receive a receipt for submitted grievances because all inmates are required to keep a copy of the grievance; and, (2) the law affords protections to inmates who are unable to access the grievance procedure. (*Id.*)

In reply, Anderson alleges Defendants' opposition is misleading and he has established each necessary element for injunctive relief. (ECF Nos. 27, 74.) For the reasons stated below, the Court recommends Anderson's motions for temporary restraining order or preliminary injunction (ECF Nos. 19, 20, 63) be denied.

### III. Legal Standard

Preliminary injunctions and temporary restraining orders are governed by the same legal standard. *See Quiroga v. Chen*, 735 F.Supp.2d 1226, 1228 (D. Nev. 2010). Such remedies are "extraordinary and drastic . . . [and] never awarded as of right[.]" *Munaf v.*

*Geren*, 553 U.S. 674, 689–90 (2008) (internal citations omitted).  When moving for a preliminary injunction or TRO, the plaintiff must make several showings: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the equities balance in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  In the Ninth Circuit, courts are to apply a "'sliding scale approach'" in evaluating the motion, "such that 'serious questions going to the merits and a balance of hardships that tips sharply towards the Plaintiff can support issuance of a preliminary injunction, so long as the Plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.'"  *Arc of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

Other considerations may apply to injunctive relief within the prison context.  First, a more stringent standard applies where a party seeks affirmative relief.  Ordinarily, preliminary injunctive relief aims to preserve the status quo pending a determination of the case on the merits.  *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009).  When "a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a preliminary injunction."  *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984).  Thus, mandatory preliminary relief is only warranted where both the facts and the law clearly favor the moving party and "extreme or very serious damage will result."  *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 2009) (internal quotation omitted).  Second, the Prison Litigation Reform Act ("PLRA") provides that, with regard to prison conditions,

> [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm.  The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Therefore, the PLRA "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. California*, 220 F.3d 987, 999 (9th Cir. 2000).

## IV.   Discussion

In order to obtain the extreme remedy of injunctive relief the moving party must establish: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and, (4) injunctive relief is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted); *Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009). As noted above, Anderson's claims are as follows: (1) a violation of RLUIPA, specifically his Fourteenth Amendment right to equal protection and First Amendment right to free exercise of his religion; and, (2) a violation of his Fourteenth Amendment right to due process. (ECF Nos. 23, 19, 20, 63.) These claims will be addressed in turn.

### A.   RLUIPA Claims

Prisoners do not retain their First Amendment rights which include the right to free exercise of religion. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). To this end, inmates enjoy the privilege of a "reasonable opportunity" to worship and have clergy or spiritual leaders visit them. *See Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The limitations on this free exercise arise from the fact of incarceration and penological objectives. *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987).

RLUIPA provides "[n]o [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless it meets the strict scrutiny standard of furthering a compelling governmental interest by the least restrictive means possible. 42 U.S.C. § 2000cc-1(a)(1)-(2). The RLUIPA replaced the

penological interest standard with the strict scrutiny standard. *Warsoldier v. Woodford*, 418 F.3d 989, 1001-1002 (9th Cir. 2005); *see also Cuttler v. Wilkinson*, 544 U.S. 709, 717, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). The United States Supreme Court set forth the *Turner* factors to ascertain the reasonableness of a prison regulation: (1) a valid, rational connection between the regulation and the legitimate governmental interest; (2) the existence of an alternative means of exercising the right; (3) the impact of accommodation on the guards and other inmates as well as the allocation of prison resources; (4) the absence of ready alternatives which supports reasonableness of the government regulation. *Turner v. Safley*, 482 U.S. 78, 89-90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1983). The effect of RLUIPA on the Turner test is simply the insertion of the burdens on the strict scrutiny standard: to determine if the intrusion is the least restrictive means of accomplishing the compelling government interest. The Supreme Court has considered RLUIPA and held it does not eliminate the deference given to prison administrators who are charged with running state institutions. *Cutter*, 544 U.S. at 709.

        1.        <u>Likelihood of Success on the Merits</u>

To prevail on his motions for TRO or PI, Anderson must show he is likely to succeed on the merits of this claim. To prevail on his RLUIPA claim, Anderson must first show a "substantial burden" on his exercise of religion. *Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008). Although RLUIPA does not define "substantial burden," the Ninth Circuit has stated a substantial burden is one that is "'oppressive' to a 'significantly great' extent. That is, a 'substantial burden, on religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier*, 418 F.3d at 995 (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). The burden need not concern a religious practice that is compelled by, or central to, a system of religious belief, *see* 42 U.S.C. § 2000cc-5(7)(A); however, the burden must be more than an inconvenience. *Navajo Nation v. U.S. Forest Service,* 479 F.3d 1024, 1033 (9th Cir. 2007), *aff'd en banc*, 535 F.3d 1058, 1068 (9th Cir. 2008) (internal quotations and citations omitted). The burden must

prevent the plaintiff "from engaging in [religious] conduct or having a religious experience." *Id.*, 479 F.3d at 1033 (internal citations omitted).

Anderson has not presented sufficient evidence to establish that he is likely to succeed on the merits of his RLUIPA claim. He does not point to any particular evidence or say how it is related to his request for injunctive relief at this time. While he concludes the use of religious objects are integral to the practice of Wicca, he does not go any further in explaining how his right to practice his Wiccan faith is substantially burdened by having to pay higher prices. In fact, Anderson has been inconsistent on whether he can or cannot purchase the religious objects necessary to practice his religion, sometimes stating NDOC has "restrict[ed] specific items of oils, incenses, herbs and tarot decks to NDOC limited canteen (store) brand only" (ECF No. 20 at 6; *see also* ECF No. 63), while at other times stating he has been entirely denied the objects. (ECF No. 20 at 10.)

Additionally, Anderson states non earth-based religions do not suffer this burden (*Id.* at 6), however, the prison canteen is the sole provider of religious items for all recognized religions. (ECF No. 26 at Ex. C, pg. 2.) In other words, Anderson has not presented the Court with sufficient information to determine that these restrictions place a significantly great restriction or onus upon the exercise of the Wiccan faith.

Moreover, Anderson's conclusory statements do not demonstrate his religious beliefs are substantially burdened. Therefore, Anderson has simply failed to provide sufficient evidence to show any likelihood of success of this claim.

By contrast, Defendants have satisfied their burden of showing a compelling governmental interest for AR 810. Defendants have a clear compelling interest in preserving the safety, order, and efficient management of LCC. (ECF No. 26 at 6; Ex. C, pg. 2.) The Supreme Court interpreted the RLUIPA to allow for religious accommodation only insofar as it does not infringe on the need for prison order and safety. *Cutter*, 544 U.S. at 722. Indeed, the Court quoted with approval the RLUIPA drafters' concern that "due deference to the experience and expertise of prison and jail administrators in establishing necessary

1  regulations and procedures to maintain good order, security, and discipline, consistent with
2  consideration of costs and limited resources." *Id.* at 723 (quoting S.Rep.No. 103-111, at 10,
3  U.S. Code Cong. & Admin. News 1993, pp. 1892-1900.)

4  Defendants allege requiring all recognized religions to purchase religious objects
5  from a single source (the prison canteen), which obtains all objects from vetted suppliers,
6  was the least restrictive means to ensure a safe and secure environment for the penal
7  institution. (ECF No. 26 at 6; Ex. C.) The decision followed an incident at HDSP where
8  religious oils from a non-vetted supplier arrived at the institution and were found to contain
9  cocaine. (*Id.*) After some discussion, it was decided prison officials would continue to have
10 a difficult time safely monitoring and controlling the practice of religion, and the religious
11 objects associated with that practice, if inmates could purchase religious objects from
12 different sources. (*Id.*) When applying the RLUIPA, "courts must take adequate account of
13 the burdens a requested accommodation may impose on nonbeneficiaries." *Cutter*, 544
14 U.S. at 720. Increasing the sources of religious objects, including but not limited to, oils,
15 herbs, and incense, would increase the risk of danger from these objects to other inmates
16 and security officials.

17 In sum, Defendants demonstrate a compelling interest in restricting prisoner access
18 to religious objects and requiring all religious objects be purchased from the prison canteen.
19 Additionally, Defendants have shown they are employing the least restrictive means to
20 further this interest. In contrast, Anderson failed to articulate how the restriction has
21 prevented the religious objects from being available in order to rebut Defendants' claimed
22 compelling interest. Accordingly, since Anderson has not shown a substantial burden has
23 been placed on his ability to practice Wicca and Defendants have shown a compelling
24 governmental interest that is being enforced by the least restrictive means possible,
25 Anderson has not proven he is likely to succeed on the merits.

26

27

### 2. Irreparable Harm

Anderson must demonstrate irreparable injury is likely in the absence of injunction. *Winter,* 555 U.S. at 375. Courts have held constitutional violations generally constitute irreparable harm because they "cannot be adequately remedied through damages." *Stormans*, 586 F.3d at 1138 (interpreting *Winter* and quoting *Nelson v. N.A.S.A.*, 530 F.3d 865, 881 (9th Cir. 2008)); *see also Warsoldier*, 418 F.3d at 1001-1002. However, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with out characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 367. Irreparable injury is not clearly shown when a plaintiff has not demonstrated a likelihood of success on their claim. *Sammartano v. First Judicial District Court, County of Carson City*, 303 F.3d 959, 973 (9th Cir. 2002).

Here, Anderson has not presented evidence of irreparable injury if the Court does not order Defendants to allow him to order religious objects directly from non-vetted vendors. He claims not being allowed to order directly from non-vetted vendors precludes the ability to practice Wicca. (ECF Nos. 20, 63.) If Anderson had demonstrated his religious exercise was substantially burdened, he might demonstrate a likelihood of irreparable injury concerning the ability to procure religious objects. However, because he has not met this burden, he has also not shown it is likely he will suffer irreparable injury.

### 3. Balance of Hardships

A party seeking injunctive relief "must establish . . . that the balance of equities tips in his favor." *Winter*, 555 U.S. at 374. In assessing whether a party has met this burden, the Court has a "duty . . . to balance the interests of all parties and weight the damage to each." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).

Defendants have an interest in maintaining order, security and discipline at the prison facility. Issuance of any preliminary injunctive relief would require this Court to significantly

interfere with NDOC policy. At no time does Anderson address the balance of hardships. (ECF Nos. 19, 20, 27, 63, 74.) The Court is mindful that at trial Defendants will have to show they "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice," but at this juncture, the security concerns top the balance of hardships in Defendants' favor. *See Greene v. Solano County Jail*, 513 F.3d 982, 989-90 (9th Cir. 2008).

### 4. Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 376-77 (quotation marks and citation omitted). "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be 'at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction." *Stormans*, 586 F.3d at 1138-39 (quoting *Bernhardt v. L.A. County*, 339 F.3d 920, 931 (9th Cir. 2003)). "If however, the impact on an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Id.* at 1139.

The public clearly has an interest in the maintenance of prison security, order, and discipline. *Cutter*, 544 U.S. at 725 n.13. The Court is not in a position to decide security decisions in prisons. *See Turner*, 482 U.S. at 89 (holding that the courts should not subject security-related judgments of prison officials to strict scrutiny). Here, the public is not served where the Court's order would potentially pose a security risk and require NDOC to cater to Anderson.

### B. Due Process Claim Related to AR 740

Anderson's claims are premised on denial of access to the courts. (*Id.*) He alleges Defendants violated AR 740 when he did not receive an initial receipt after his grievances were collected, which he claims resulted in the loss or destruction of the grievances and his ultimate inability to effectively exhaust all administrative remedies. (*Id.*) In support of his

claims, Anderson provided two grievances he submitted and an affidavit. (*Id.*)[5] Defendants challenge Anderson's claims on the grounds that inmates are required to keep a copy of each grievance prior to submitting it for a response, therefore NDOC does not need to provide a receipt when grievances are collected. (ECF No. 26 at 7, EX. D.) Additionally, inmates will not be denied access to the courts should the court determine administrative remedies were unavailable. *Ross v. Blake*, 136 S.Ct. 1850, 1862 (2016).

### 1. Likelihood of Success on the Merits

Anderson has also not demonstrated a likelihood of success on the merits of his due process claims related to AR 740. (ECF Nos. 19, 20, 63.)[6] In order to establish a violation of a right of access to the courts, a prisoner must establish he or she suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). An "actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348.

Anderson has not alleged any actual injury. (ECF Nos. 19, 20, 63.) He does not allege he has actually been barred from bringing suit for failure to exhaust, or he was unable to file a complaint. (*Id.*) In fact, Defendants have not even raised the issue of exhaustion. (ECF Nos. 26, 69.) Accordingly, Anderson's claims are speculative, i.e., that he *will* be barred at some future date from bringing or continuing to bring suit due to failure to exhaust. Speculation is insufficient to establish actual injury. *Lewis*, 518 U.S. at 354. Anderson is therefore unlikely to succeed on the merits.

---

[5] In his reply (ECF No. 74) Anderson includes further support of his RLUIPA claim in the form of a Wiccan wheel of the year, grimoire excerpts, a list of allowable religious objects and affidavits of other inmates. (*Id.*) None of which change the Court's RLUIPA analysis as it pertains to the motions. (ECF Nos. 19, 20, 63.)

[6] Anderson essentially tries to add onto his original motion for a temporary restraining order, succinctly repeating his prior claims. (ECF No. 63.)

### 2. Irreparable Harm

Moreover, Anderson has not presented evidence of irreparable injury if the Court does not order Defendants to enforce the distribution of initial receipts to inmates when grievances are collected. (ECF Nos. 20, 63.) If Anderson had demonstrated his due process rights to access the courts were substantially burdened, he might demonstrate a likelihood of irreparable injury concerning the need for such enforcement. However, because he has not met this burden, he has also not shown that it is likely he will suffer irreparable injury.

### 3. Balance of Hardships

The balance of hardships does not tip sharply in Anderson's favor. Issuance of any preliminary injunctive relief would require the Court to significantly interfere with the internal processes of the NDOC. Mandating the NDOC to "correct [sic] AR 740['s] Inmate Grievance inadequacies and implement effective tracking of inmate grievances" would improperly interfere with prison administration. *Turner v. Safley*, 482 U.S. 78, 84-85 (1987) ("Prison administration is . . . a task that has been committed to the responsibility of . . . [the legislative and executive] branches, and separation of powers concerns counsel a policy of judicial restraint."). Given the Court must accord "substantial weight" to the effects of injunctive relief on the operation of the prison, the Court finds the balance of hardships favors Defendants. *See* 18 U.S.C. § 3626(a)(2).

### 4. Public Interest

Ordering the NDOC to fix perceived deficits in AR 740 and track grievances in a particular fashion does not benefit the public interest because the Court is not in a position to make security or administrative decisions in prisons. *Turner*, 482 U.S. at 89. Here, the public is not served where the Court's order would potentially overstep the separation of powers.

Based on the above, the Court recommends Anderson's motions for TRO or PI (ECF Nos. 19, 20, 63) be denied.

**V.     Other Pending Motions**

Because the Court has determined there is no basis for a temporary restraining order or preliminary injunction, it is recommended that Anderson's motion for a hearing regarding these motions (ECF No. 33), be denied as moot.

**VI.    Conclusion**

For the reasons articulated above, the Court recommends Anderson's motions for temporary restraining order or preliminary injunction (ECF Nos. 19, 20, 63) be denied. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

**VII.   RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for a preliminary injunction and a temporary restraining order (ECF Nos. 19 & 20) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion for a temporary restraining order (ECF No. 63) be **DENIED**; and

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion for a hearing regarding these motions (ECF No. 33) be **DENIED as moot**.

**DATED:** July 24, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**