1

2      **UNITED STATES DISTRICT COURT**

3      **DISTRICT OF NEVADA**

4

5    JOSEPH M. ANDERSON,                           3:18-cv-00426-MMD-CLB

6                            Plaintiff,

7      v.                                          **REPORT AND RECOMMENDATION
                                                   OF U.S. MAGISTRATE JUDGE[1]**
8

9    JAMES DZURENDA, *et al.,*
                            Defendants.
10

11          This case involves a civil rights action filed by Plaintiff Joseph Anderson

12   ("Anderson") against Defendants Kim Adamson, Romeo Aranas, Veronica Austin,

13   Renee Baker, Susan Baros, Francisco Bautista, Dwayne Baze, Quentin Byrne, David

14   Carpenter, Tara Carpenter, Ian Carr, Anthony Carrasco, Jeffrey Chandler, Nichole

15   Cordova, James "Greg" Cox, Scott Davis, Russell Donnelly, James Dzurenda, Arwen

16   Feather, Pamela Feil, Gilberto Filorio-Ramirez, Sheryl Foster, Tim Garrett, Coralee

17   Gorsline, Katherine Hegge, Desiree Hultenschmidt, William Kablitz, Walter Lima-

18   Hernandez, Dominick Martucci, E.K. McDaniel, Valaree Olivas, William Sandie, Richard

19   Snyder, James Stogner, Roger Terrance, Kim Thomas, Joy Walsh, Harold Wickham,

20   and Catherine Yup (collectively referred to as "Defendants").[2]  Currently pending before

21   _____

22   [1]     This Report and Recommendation is made to the Honorable Miranda M. Du,
     United States District Judge.  The action was referred to the undersigned Magistrate
23   Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

24   [2]     Anderson also named B. Rutherford, Ray East, Beckerdite, Jethro Parks, M.
     Gilder, Steve Ballentine, Sheri Gentry, B. Carthen, C. Langley, and R. Kienenberger.
25   (*See* ECF No. 15, 23.)  Defendants East, Beckerdite, Parks, Gilder, Gentry, Langley, and
     Kienenberger were dismissed upon screening of the amended complaint.  (ECF No. 22.)
26   Defendants Rutherford and Carthen were dismissed based on a voluntary motion to
     dismiss by Anderson.  (*See* ECF Nos. 49, 54.)  Defendant Ballentine was dismissed for
27   failure to properly effectuate service of process pursuant to Federal Rule of Civil
     Procedure 4(m).  (*See* ECF Nos. 144, 156.)
28

the court is Defendants' motion for summary judgment.   (ECF Nos. 208, 210.)[3]
Anderson opposed the motion (ECF No. 219), and Defendants replied (ECF No. 223).
Anderson also filed a motion for leave to supplement his response (ECF No. 224).
Defendants responded (ECF No. 225) and Anderson did not file a reply.  Also before the
court is Anderson's motion for preliminary injunction (ECF No. 204), to which Defendants
responded (ECF No. 205), and Anderson replied (ECF No. 206.)   Having thoroughly
reviewed the record and the papers, the court recommends that Defendants' motion for
summary judgment (ECF No. 208) be granted, in part, and denied, in part, Anderson's
motion for leave to supplement his response (ECF No. 224) be denied, and Anderson's
motion for preliminary injunction (ECF No. 204) be denied.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Anderson is an inmate in the custody of the Nevada Department of Corrections
("NDOC").  At the time relevant to this action, Anderson was incarcerated at the Lovelock
Correctional Center ("LCC").  (ECF No. 23).  On November 13, 2018, Anderson filed his
amended *pro se* civil rights complaint.   (*Id.*)   Upon screening and a motion for
reconsideration, the District Court allowed Anderson to proceed with the following
claims:[4] (1) Count I, alleging a Fourteenth Amendment equal protection claim against
Defendants Dzurenda, Thomas, Byrne, T. Carpenter, Baze, Stogner, Carrasco,
McDaniel, Cox, Foster, Snyder, Wickham, Baker, Baros, and Olivas; (2) Count I, alleging
a First Amendment free exercise of religion claim against Defendants Dzurenda,
Thomas, Walsh, Gorsline, Byrne, T. Carpenter, Baze, Carrasco, Stogner, McDaniel,
Cox, Foster, Feather, Olivas, Snyder, Wickham, Baker, and Baros; (3) Count I, alleging a
First Amendment retaliation claim against Dzurenda, Thomas, Walsh, Gorsline, Baker,
Baros, Byrne, T. Carpenter, Baze, Carrasco, Stogner, McDaniel, Cox, Foster, Feather,

---

[3]    ECF No. 210 consists of sealed documents filed in support of Defendants' motion
for summary judgment.

[4]    For the sake of brevity, the court will not discuss the claims that have been
dismissed in this order.  However, for reference, the screening orders in this case—ECF
Nos. 14 and 22—include the claims that were dismissed.

and Olivas; (4) Count I, alleging a Fourteenth Amendment access to courts claim against Defendants Dzurenda, Thomas, Walsh, Gorsline, Byrne, T. Carpenter, Baze, Carrasco, Stogner, McDaniel, Cox, Foster, and Olivas; (5) Count I, alleging a First Amendment free exercise of religion violation against Defendants Dzurenda, Thomas, Baker, Carpenter, Chandler, Snyder, Wickham, and Davis; (6) Count I, alleging a Religious Land Use and Institutionalized Persons Act violation against Defendants Dzurenda, Thomas, Baker, Carpenter, Chandler, Snyder, Wickham, and Davis; (7) Count II, alleging an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Aranas, Adamson, Yup, Hultenschmidt, Hegge, Donnelly, Austin, Feather, Carpenter, Terrance, Kablitz, Martucci, and Lima-Hernandez; (8) Count II, alleging a First Amendment retaliation claim against Defendants Carr, Sandie, Bautista, Olivas, Filorio, Garret, T. Carpenter, D. Carpenter, Baker, Baze, Dzurenda, Thomas, Cordova, Wickham, and Feil; and (9) Count II, alleging a First Amendment retaliation claim, based on Anderson being found guilty of a disciplinary charge, against Defendants D. Carpenter, Baker, Thomas, and Dzurenda.  (*See* ECF Nos. 22, 30.)  The complaint consists of several distinct, and in some instances, unrelated factual scenarios.  For clarity, the court will discuss each factual scenario in turn.

> **A.    Count I – Fourteenth Amendment Equal Protection; First Amendment Free Exercise of Religion; First Amendment Retaliation; Fourteenth Amendment Access to Courts; Religious Land Use and Institutionalized Persons Act**

Count I of the amended complaint alleges that Defendants Dzurenda, Baker, Thomas, Walsh, Gorsline, Byrne, T. Carpenter, Baze, Carrasco, Stogner, McDaniel, Cox, Foster, Feather, Baros, Snyder, Wickham, and Olivas generally denied Anderson approval to practice certain Wiccan religious practices and to buy religious property items used for religious expression of Wicca tenets.  (*See* ECF No. 23 at 16-21.) Defendants Dzurenda, Thomas, Walsh, Gorsline, Byrne, T. Carpenter, Baze, Carrasco, Stogner, McDaniel, Cox, Foster, and Olivas intentionally misplaced a grievance in order to prevent Anderson's access to the court in another civil rights action (Case No. 3:16-

1  cv-00056-RCJ-WGC).  (*Id.* at 16.)  Defendants Baker, T. Carpenter, Feather, Baros, and
2  Carrasco have failed to process his grievances in retaliation, or these grievances have
3  become lost, misplaced, or disposed of by the careless handling of grievance
4  coordinators.  (*Id.* at 16-17, 19.)

5       Defendants Dzurenda, Thomas, Byrne, T. Carpenter, Baze, Stogner, Carrasco,
6  McDaniel, Cox, Foster, and Olivas imposed disparate treatment between chapel-based
7  and earth-based religious groups by allowing chapel-based religious groups daily access
8  to the LCC chapel and limiting earth-based religious groups to only one day a week for
9  religious services.  (*Id.* at 17.)  These Defendants provided chapel-based religious
10  evening/night chapel services, while denying earth-based religions the same treatment,
11  which interferes with Wiccans' ability to observe full-moon esbats.  (*Id.*)  Defendants
12  Dzurenda, Thomas, Stogner, Carrasco, Snyder, Wickham, Baker, T. Carpenter, and
13  Baros denied Anderson the ability to observe sunrise/sunset pursuant to his religious
14  beliefs, which also requires the use of herbs and religious oils.  (*Id.* at 18-20.)  Anderson
15  claims that Defendants allow similarly situated chapel-based religions daily access to the
16  chapel while refusing to allow Anderson, a solitaire Wicca practitioner, to observe his
17  religious beliefs outdoors on the designated religious grounds for solitaires.  (*Id.*)
18  Anderson therefore must worship in his cell, without religious items.  (*Id.*)  Anderson also
19  claims his cell has been retaliatorily searched, items confiscated, and he has been
20  harassed by officers who are trying to deter his religious practices.  (*Id.* at 18.)  Anderson
21  also alleges that Defendants have imposed a significant, substantial burden on
22  "Solitaire" Wicca Practitioners in violation of the Religious Land Use and Institutionalized
23  Persons Act of 2000 ("RLUIPA") by implementing non-neutral religious policies and
24  regulations.  (*Id.* at 21.)

25       Based on these allegations, the Court allowed Anderson to proceed with (1)
26  Fourteenth Amendment equal protection claim, (2) First Amendment free exercise of
27  religion claim, (3) First Amendment retaliation claim, (4) Fourteenth Amendment access
28

to courts claim, (5) First Amendment free exercise of religion claim, and (6) RLUIPA violation.  (*See* ECF Nos. 22, 30.)

### B.     Count II – Eighth Amendment Deliberate Indifference to Serious Medical Needs

Next, in Count II, Anderson alleges that Defendants Aranas, Dr. Adamson, Yup, Hultenschmidt, Hegge, Donnelly, Austin, Feather, Carpenter, Terrance, Kablitz, and Martucci denied Anderson's medical kites and complaints for medical attention for five days.  (ECF No. 23 at 22.)  Specifically, Anderson had a severe toothache, was in pain, his face was swollen, he could not eat, and he could not sleep.  (*See id.* at 22-23.)  Defendant Lima-Hernandez verbally denied Anderson medical attention on many occasions and, on one occasion did so in front of Terrance.  (*See id.* at 22-24.)  Anderson also complained to the Unit 6 officers Kablitz and Martucci that he was in pain and needed medical help.  (*Id.* at 23.)  Kablitz and Martucci both informed Anderson that they had called medical, and medical had informed the officers that Anderson could come back when a dentist would be available.  (*Id.*)  After five days, Anderson was finally treated.  (*Id.* at 22.)  Defendants Yup and Hultenschmidt lanced the abscesses.  (*Id.* at 24.)  These abscesses had led to blood poisoning and injury to Anderson's heart and breathing.  (*Id.*)  Anderson also lost two teeth.  (*Id.*)  Anderson states that he filed a grievance putting all Defendants on notice.  (*Id.*)

Based on these allegations, the Court allowed Anderson to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim.  (*See* ECF Nos. 22, 30.)

### C.     Count II – First Amendment Retaliation

Also, in Count II, Anderson alleges that Defendants Carr, Sandie, Bautista, Olivas, Filorio, Garret, T. Carpenter, D. Carpenter, Baker, and Baze conspired to bring about false disciplinary charges to punish Anderson for engaging in protected First Amendment conduct with another inmate and that these charges served no legitimate penological goal.  (*Id.* at 24-25.)  Anderson also alleges that Defendants Carr, Sandie,

Olivas, Baker, T. Carpenter, D. Carpenter, and Garret retaliated against Anderson for assisting inmate B. Kamadula with legal work by filing a notice of disciplinary charge and by removing Anderson from his job and preferred housing. (*Id.* at 25.) Anderson claims these same defendants also retaliated against him for filing grievances and naming certain spouses in other legal actions. (*Id.* at 24-25.) Anderson alleges Defendants Dzurenda, Thomas, Cordova, Wickham, Feil, Baker, T. Carpenter, and Baze failed to correct Sandie's acts of retaliation. (*Id.*) Sandie retaliated as the result of Carr notifying LCC prison authorities that Anderson had assisted another inmate with naming Sandie in that inmate's state court action. (*See id.* at 25-26.) Sandie then retaliated by charging Anderson and the other inmate with disciplinary actions. (*Id.* at 26.)

Finally, in Count II, Anderson alleges another retaliation claim based on allegations that Defendants D. Carpenter, Baker, Thomas, and Dzurenda violated his rights when he was found guilty of a disciplinary violation by a "biased non impartial hearing officer," D. Carpenter. (*Id.* at 26.) Specifically, D. Carpenter found Anderson guilty in retaliation for Anderson naming D. Carpenter's spouse, T. Carpenter, as a defendant. (*Id.*) Anderson claims that the other defendants were aware of what happened. (*Id.*)

Based on these allegations, the Court allowed Anderson to proceed with First Amendment retaliation claims. (*See* ECF Nos. 22, 30.)

### D. Defendants' Motion for Summary Judgment

On November 16, 2020, Defendants filed their motion for summary judgment (ECF Nos. 208, 210). Defendants argue Anderson's claims lack merit, specificity, supporting evidence, and wholly fail to state a viable cause of action under the law. (*Id.*) Defendants also argue they are entitled to qualified immunity as a matter of law, and Anderson failed to provide evidence of personal participation by the Defendants. (*Id.*) Finally, Defendants argue they are entitled to summary judgment on the merits of Anderson's claims. (*Id.*)

///

1    **II.    LEGAL STANDARD**

2          Summary judgment should be granted when the record demonstrates that "there

3    is no genuine issue as to any material fact and the movant is entitled to judgment as a

4    matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive

5    law will identify which facts are material. Only disputes over facts that might affect the

6    outcome of the suit under the governing law will properly preclude the entry of summary

7    judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

8    *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only

9    where a reasonable jury could find for the nonmoving party. *Id.* Conclusory

10   statements, speculative opinions, pleading allegations, or other assertions

11   uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v.*

12   *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83

13   F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that

14   reasonable minds could differ when interpreting the record; the court does not weigh the

15   evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132

16   (9th Cir. 2012); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th

17   Cir. 1994).

18          Summary judgment proceeds in burden-shifting steps. A moving party who does

19   not bear the burden of proof at trial "must either produce evidence negating an essential

20   element of the nonmoving party's claim or defense or show that the nonmoving party

21   does not have enough evidence of an essential element" to support its case. *Nissan*

22   *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately,

23   the moving party must demonstrate, on the basis of authenticated evidence, that the

24   record forecloses the possibility of a reasonable jury finding in favor of the nonmoving

25   party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT &*

26   *SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences

27   arising therefrom in the light most favorable to the nonmoving party. *Colwell v.*

28   *Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence…. In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III.   DISCUSSION

### A. Civil Rights Claims under 42 U.S.C. § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Gates*, 947

1   F.2d 1418, 1420 (9th Cir. 1991).  Claims under section 1983 require a plaintiff to allege

2   (1) the violation of a federally protected right by (2) a person or official acting under the

3   color of state law.  *Warner*, 451 F.3d at 1067.  Further, to prevail on a § 1983 claim, the

4   plaintiff must establish each of the elements required to prove an infringement of the

5   underlying constitutional or statutory right.

6   **B. Fourteenth Amendment – Equal Protection**

7   "The Equal Protection Clause requires the State to treat all similarly situated

8   people equally."  *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citing *City of*

9   *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  The preliminary inquiry in

10   an equal protection claim is identifying the plaintiff's relevant class, which is "comprised

11   of similarly situated persons so that the factor motivating the alleged discrimination can

12   be identified."  *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (internal

13   quotation omitted).  Then, "a plaintiff must show that the defendant acted with an intent

14   or purpose to discriminate against him based upon his membership in a protected

15   class."  *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).  Because the claim

16   requires proof of intentional discrimination, "[m]ere indifference" to the unequal effects

17   of a particular class does not establish discriminatory intent.  *Thornton v. City of St.*

18   *Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

19   In the religious exercise context, "[p]risoners enjoy religious freedom and equal

20   protection of the law subject to restrictions and limitations necessitated by legitimate

21   penological interests."  *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (citing *Bell*

22   *v. Wolfish*, 441 U.S. 520, 545-46 (1979)), overruled on other grounds by *Shakur*, 514

23   F.3d at 884-85.  "[P]rison officials cannot discriminate against particular religions" and

24   "must afford an inmate of a minority religion 'a reasonable opportunity of pursuing his

25   faith comparable to the opportunity afforded fellow prisoners who adhere to

26   conventional religious precepts.'"  *Id.* (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)).

27   To defeat summary judgment on a religious discrimination claim, the prisoner must set

28   forth specific facts showing that there is a genuine dispute "as to whether he was

9

1    afforded a reasonable opportunity to pursue his faith as compared to prisoners of other

2    faiths and that such conduct was intentional."  *Id.* (quoting Fed. R. Civ. P. 56(a)).

3    Defendants move for summary judgment on the equal protection claim on the

4    basis that the record lacks evidence that Anderson and other chapel-based religious

5    groups are treated differently, as there is no evidence Wicca inmates were not afforded

6    a reasonable opportunity of pursuing their faith comparable to other chapel-based

7    religious groups.  (ECF No. 208 at 9-10.)  Further, Defendants argue Anderson offers

8    no evidence that the alleged lack of access to the religious grounds is a product of

9    Defendants' discriminatory intent.  (*Id.*)  In opposition, Anderson argues that Defendants

10   offer chapel-based religious adherents' daily access to both day and evening religious

11   services, while restricting Earth-based religious adherents, such as Anderson, to once

12   weekly services.  (ECF No. 219 at 30.)

13   The court recommends that Defendants' motion as to the Count I equal

14   protection claim be granted.  First, and importantly, there is an absence of evidence

15   related to discriminatory intent, and Anderson's opposition fails to identify any evidence

16   in the record from which a jury could conclude that Defendants intentionally

17   discriminated against him on the basis of his Wiccan beliefs.  (*See* ECF No. 219 at 62,

18   64, 66.)  Although Anderson broadly complains of differential treatment between earth-

19   based and chapel-based religious groups, Ninth Circuit precedent provides that such

20   differences—and mere indifference thereto—is not constitutionally infirm.  *Hartmann v.*

21   *Cal. Dep't of Corrs. and Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (within the prison

22   context, the Constitution's equal protection guarantees do not entitle each religious

23   group within a prison to "identical treatment and resources.");  *Thornton*, 425 F.3d at

24   1167.    Without more, no constitutional claim can prevail.    Anderson does not assert

25   that other inmates of earth-based religions were allowed access to the earth-based

26   grounds, while he was not.  Further, in reviewing the LCC chapel schedule, it does not

27   appear that chapel-based religious groups are given unlimited chapel access, but rather

28   are given designated, limited timeslots to utilize chapel space.  (*See* ECF No. 204-1 at

389, 391, 393, 395, 397, 399, 401.)  For these reasons, summary judgment should be granted as to Anderson's Count I equal protection claim.[5]

### C.  First Amendment – Free Exercise of Religion

Anderson's free exercise claim relates to his contention that the NDOC's policy of restricting the use of certain religious items and access to religious grounds substantially burdens his religious practice.  (ECF No. 23 at 16-21.)  Defendants move for summary judgment based on their contention that the NDOC's restrictions serve a legitimate penological purpose.  (ECF No. 208 at 10-12.)

"The right to exercise religious practices and beliefs does not terminate at the prison door.  The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security."  *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) (citations omitted); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  In order to implicate the Free Exercise Clause, the inmate's belief must be both sincerely held and rooted in religious belief.  *See Shakur*, 514 F.3d at 884-85.  "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of [his] religion."  *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015).  A regulation that impinges on First Amendment rights "is valid if it is reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The factors *Turner* cited as relevant to the inquiry of whether the restrictions are reasonably related to legitimate penological interests are: (1) a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2)" whether there are alternative means of exercising the right that remain open to inmates"; (3) "the impact accommodation of the asserted constitutional

---

[5]    Defendants' motion also includes arguments related to personal participation and qualified immunity.  (*See* ECF No. 208 at 9-10, 30-31.)  Because the court finds that Anderson's rights were not violated, it need not address these additional arguments.

1   right will have on guards and other inmates, and on the allocation of prison resources

2   generally"; and (4) the "absence of ready alternatives" and the "existence of obvious,

3   easy alternatives." *Turner*, 482 U.S. at 89-91.

4       The Defendants do not appear to question Anderson's sincerely held religious

5   beliefs or that his Wiccan faith requires him to observe sunrise/sunset and possess

6   certain religious items.  The issue, instead, is whether the Defendants' limitation on

7   access to religious grounds and limitations on religious property is reasonably related to

8   legitimate penological interests cited by the Defendants.

9       Defendants do not specifically address the *Turner* factors in arguing whether the

10  restrictions are reasonably related to legitimate penological interests.  (*See* ECF No.

11  208 at 10-12.)   Instead, Defendants make conclusory arguments that safety and

12  security and staffing limitations are legitimate penological interests for restricting

13  Anderson's religious activities.  While this may be true, Defendants cannot simply make

14  these assertions without any supporting evidence regarding the alleged costs and

15  security concerns.  Likewise, Defendants cannot simply assert that "[t]here is a rational

16  reason for both the restrictions on purchasing outside religious items, and for the time

17  and place worship restrictions."  (ECF No. 208 at 11-12.)  Without more, the court

18  cannot make a determination as to whether the policies/regulations are reasonably

19  related to a legitimate penological purpose and are valid under *Turner*.  The court finds

20  there are unresolved questions of material fact as to whether Defendants have

21  prevented Anderson from adequately practicing his religion by denying approval of

22  religious practices and religious property items used for religious expression of Wicca

23  tenets and the ability to observe sunrise/sunset pursuant to his religious beliefs.  Thus,

24  the court recommends that the motion for summary judgment be denied as to the First

25  Amendment free exercise claims.[6]

26  ///

27  _____

28  [6]     The court addresses Defendants' qualified immunity argument as to the free exercise claim in section H, *infra*.

### 1.    Personal Participation

"There are two elements to a section 1983 claim: (1) the conduct complained of must have been under color of state law, and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights." *Jones v. Cmty. Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984).  A prerequisite to recovery under the Civil Rights Act, 42 U.S.C. § 1983, is that the plaintiff prove that the defendants deprived him of a right secured by the Constitution and the laws of the United States. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985).  Liability under § 1983 arises only upon a showing of personal participation by the defendant.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  "[V]icarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Defendants argue that Dzurenda, Thomas, Cox, Foster, McDaniel, Wickham, and Byrne are current and/or former Directors or Deputy Directors of the NDOC who did not personally participate in the alleged constitutional violations and therefore they should be granted summary judgment.  (ECF No. 208 at 9-10.)  In his declaration, Wickham states that at the Director level, neither he, nor any of his colleagues at that level would have been aware of Anderson's daily complaints.  (ECF No. 208-1.)  Further, he states:

> As Directors within the constructs of the Nevada Department of Corrections, we formulate policies and regulations as required by the Nevada Revised Statutes.  However, those regulations are then promulgated to the various departments and institutions for implementation.  The various Wardens and supervisors then implement the policies in the best manner for each individual institution.  Chapel schedules and access to the various religious grounds are not planned or mandated at the director level.  Most often, the Directors are not even

aware of the Chapel schedules at the various institutions.  These are left to the Wardens and Chaplains to plan and implement.

(*Id.* at 3 ¶ 11.)

Here, Anderson has presented no evidence that Defendants Dzurenda, Thomas, Cox, Foster, McDaniel, Wickham, or Byrne participated, directed, or knew of Anderson's allegations or that they had individual and specific involvement in implementing the LCC chapel schedule.  Accordingly, because vicarious liability is inapplicable to § 1983 suits and Anderson has failed to put forth evidence that these particular individuals, through their own actions, violated the Constitution, *See Iqbal*, 556 U.S. at 676, the court recommends that summary judgment be granted in favor of Defendants Dzurenda, Thomas, Cox, Foster, McDaniel, Wickham, and Byrne based on a lack of personal participation in the alleged constitutional violations.

**D.  RLUIPA**

RLUIPA, provides in relevant part:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  Thus, RLUIPA mandates a stricter standard of review for prison regulations that burden the free exercise of religion than the reasonableness standard articulated in *Turner*.  *Greene v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (citations omitted).

To establish a RLUIPA violation, a plaintiff must show that: (1) he participates in a religious exercise, and (2) the prison regulation substantially burdened that exercise. *Walker v. Beard*, 789 F.3d 1125, 1134 (9th Cir. 2015).  The burden then shifts to the state to show its regulation is the least restrictive means of furthering a compelling governmental interest.  *Id.*  The Ninth Circuit has set out four factors for the RLUIPA analysis: (1) what "exercise of religion" is at issue; (2) what "burden," if any, is imposed

on that exercise of religion; (3) if there is a burden, whether it is "substantial;" and (4) if there is a "substantial burden," whether it is justified by a compelling governmental interest and is the least restrictive means of furthering that compelling interest. *Navajo Nation v. U.S. Forest Serv.*, 479 F.3d 1024, 1033 (9th Cir. 2007), *aff'd en banc*, 535 F.3d 1058, 1068 (9th Cir. 2008).

Although RLUIPA does not define what constitutes a "substantial burden" on religious exercise, the burden must be more than a mere inconvenience. *Navajo Nation*, 479 F.3d at 1033 (internal quotations and citations omitted). The Ninth Circuit has stated that a substantial burden is one that is "'oppressive' to a 'significantly great' extent." "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). The burden must prevent the plaintiff "from engaging in [religious] conduct or having a religious experience." *See Navajo Nation*, 479 F.3d at 1033 (internal citations omitted). In addition, a substantial burden exists when the state, "denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Shakur*, 514 F.3d at 888 (quoting *Thomas v. Review Bd. of the Ind. Employment Sec. Div.*, 450 U.S. 707, 717-18 (1981) (internal quotations omitted)).

The religious exercise at issue in this case is based on restrictions on religious property, individual use of religious items versus group use, and limitations on access to religious grounds. (ECF No. 23 at 21-23.) The crux of Anderson's contentions seem to center around his self-classification as a Solitary Wiccan Practitioner. The court understands Anderson's position to be that the solitary nature of his practice *is* of fundamental importance to his religious belief. (*See* ECF No. 219 at 16-32.) According to Anderson, as a solitary Wiccan he would violate his core beliefs if he participated in group Wiccan worship, which is required to utilize certain religious items. (*See id.*; ECF

No. 219-1 at 193.)    Anderson argues that without certain religious items to make offerings, perform purification rites, and conduct worship rituals, he is precluded from practicing Wicca.  (ECF No. 219 at 52.)   Anderson states "Defendants unreasonably caused a substantial burden to [his] protected First Amendment religious conduct by denying religious items for worship rituals and imposing non-neutral religious policies that prohibit [him] from engaging in the practices of Wicca as a solitare (sic).... Forcing [Anderson] to abandon his religious beliefs and worship other forms of divinity in a group setting to receive religious items cannot reasonably create a safety and security issue."  (*Id.*)  Defendants contend that Anderson cannot establish that the restriction that he be limited to utilizing certain religious items in a group setting imposes a substantial burden on his religion. However, that is exactly Anderson's contention. Thus, there is a dispute of material fact regarding the sincerity of Anderson's alleged belief that solitary practice is mandated by Wicca, in Anderson's view. Such a dispute creates an issue of material fact regarding whether Anderson's exercise has been burdened.  Given the above, the court finds that a reasonable fact finder could find that Anderson's faith was substantially burdened.

Moreover, RLUIPA requires the NDOC to prove restrictions on religious property, individual use of religious items versus group use, and limitations on access to religious grounds are the least restrictive means of furthering a compelling governmental interest, *Greene*, 513 F.3d at 986; whereas, the First Amendment analysis requires the NDOC to prove the same restrictions are "reasonably related to a legitimate penological interests," *Turner*, 482 U.S. at 89.  Indeed, RLUIPA's least restrictive means standard is more demanding than the First Amendment's reasonably related standard. Thus, for the same reasons that Defendants have failed to show the record has foreclosed the possibility of a reasonable jury concluding the restrictions are not reasonably related to a legitimate penological interest, Defendants have also failed to meet the more demanding RLUIPA standard. Therefore, a triable issue of material fact exists as to

1    Anderson's RLUIPA claim.[7]

2    **E. First Amendment – Retaliation and Fourteenth Amendment Access to Courts (Count I)**

3

4    Anderson's Count I retaliation claim relates to allegations that Anderson's cell has

5    been retaliatorily searched, items confiscated, and Anderson has had grievances

6    misplaced, lost, or destroyed.  (ECF No. 23 at 16-17, 19.)  Anderson's access to courts

7    claim is based on allegations that Defendants frustrated his ability to timely present a

8    claim by intentionally misplacing a grievance in order to prevent Anderson's access to

9    the court in another civil rights action (Case No. 3:16-cv-00056-RCJ-WGC).  (*Id.* at 16.)

10   These allegations and claims are entirely interconnected; thus, the court finds it

11   appropriate to address the claims in tandem.

12   **1.  Access to Courts Standard**

13   Prisoners have a constitutional right of access to the courts.  *See Lewis v. Casey*,

14   518 U.S. 343, 346 (1996).  This right "requires prison authorities to assist inmates in the

15   preparation and filing of meaningful legal papers by providing prisoners with adequate

16   law libraries or adequate assistance from persons trained in the law."  *Bounds v. Smith*,

17   430 U.S. 817, 828 (1977).  This right, however, "guarantees no particular methodology

18   but rather the conferral of a capability—the capability of bringing contemplated

19   challenges to sentences or conditions of confinement before the courts."  *Lewis*, 518

20   U.S. at 356.  It is this "capability, rather than the capability of turning pages in a law

21   library, that is the touchstone" of the right of access to the courts.  *Id.* at 356-57.

22   To establish a violation of the right of access to the courts, a prisoner must

23   establish that he or she has suffered an actual injury, a jurisdictional requirement that

24   flows from the standing doctrine and may not be waived.  *Id.* at 349.  An "actual injury" is

25   "actual prejudice with respect to contemplated or existing litigation, such as the inability

26   to meet a filing deadline or to present a claim."  *Id.* at 348.  Delays in providing legal

27   _____

28   [7]    The court addresses Defendants' qualified immunity argument as to the RLUIPA claim in section H, *infra*.

1  materials or assistance that result in actual injury are "not of constitutional significance" if

2  "they are the product of prison regulations reasonably related to legitimate penological

3  interests." *Id.* at 362. The right of access to the courts is limited to non-frivolous direct

4  criminal appeals, habeas corpus proceedings, and § 1983 actions. *Id.* at 353 n.3, 354-

5  55.

### 2.  Retaliation Standard

7  It is well established in the Ninth Circuit that prisoners may seek redress for

8  retaliatory conduct by prison officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559,

9  567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners

10  have a First Amendment right to file grievances against prison officials and be free from

11  retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). A

12  retaliation claim has five elements: (1) a state actor took some adverse action against

13  the inmate (2) because of (3) the inmate's protected First Amendment conduct, and that

14  the action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not

15  reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–68. If the

16  plaintiff fails to allege that the retaliation had a chilling effect, he or she may still state a

17  claim by alleging some other harm. *Id.* at 568 n.11.

### 3.  Analysis

19  In the Report and Recommendation in the previous matter, the court stated that

20  Anderson; "started this grievance process on November 26, 2015, four days before he

21  filed his original Complaint in State court on November 30, 2015. (ECF No. 1-2.)

22  [Anderson] did not get a response to the informal level grievance until December 9,

23  2015, so there is no way he could have completed exhaustion as to this grievance

24  before he filed his Complaint." (ECF No. 208-18.) The Court found that Anderson failed

25  to exhaust his administrative remedies with respect to the claims asserted in grievance

26  20063012337, prior to initiating that action, and it was not the result of a delay in

27  processing the grievance. Thus, because the action was dismissed based on a failure to

28  exhaust by filing his initial grievance only four days prior to filing his complaint, Anderson

1    cannot prove that he was denied access to the courts.

2    Further, the Court granted summary judgment to the Defendant in the prior case,

3    finding no violation of his rights where Anderson's cell was searched, and items

4    purported to be used in religious practices were confiscated allegedly in retaliation

5    towards Anderson's religion. (*See* ECF No. 208-16.)  Therefore, Anderson cannot

6    demonstrate that his First Amendment rights were actually chilled by the alleged

7    retaliatory action. *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000).  Anderson

8    was able to file the prior and current actions and Defendants are not claiming Anderson

9    failed to exhaust the grievance process. Consequently, as there is no evidence to

10   support Anderson's assertions, there is no genuine dispute of material fact as to the

11   retaliation claim.  Accordingly, the court recommends that Defendants' motion for

12   summary judgment be granted as to the retaliation and access to courts claims.

13   **F.  Eighth Amendment – Deliberate Indifference to Serious Medical Needs**

14   Anderson's deliberate indifference to serious medical needs claim is based upon

15   allegations that he was denied medical attention for a dental issue for a period of five

16   days. (ECF No. 23 at 22-24.)

17   The Eighth Amendment "embodies broad and idealistic concepts of dignity,

18   civilized standards, humanity, and decency" by prohibiting the imposition of cruel and

19   unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)

20   (internal quotation omitted).  The Amendment's proscription against the "unnecessary

21   and wanton infliction of pain" encompasses deliberate indifference by state officials to

22   the medical needs of prisoners. *Id.* at 104 (internal quotation omitted).  It is thus well

23   established that "deliberate indifference to a prisoner's serious illness or injury states a

24   cause of action under § 1983." *Id.* at 105.

25   Courts in this Circuit employ a two-part test when analyzing deliberate

26   indifference claims.  The plaintiff must satisfy "both an objective standard—that the

27   deprivation was serious enough to constitute cruel and unusual punishment—and a

28   subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal

1  quotation omitted).  First, the objective component examines whether the plaintiff has a

2  "serious medical need," such that the state's failure to provide treatment could result in

3  further injury or cause unnecessary and wanton infliction of pain.  *Jett v. Penner*, 439

4  F.3d 1091, 1096 (9th Cir. 2006).  Serious medical needs include those "that a

5  reasonable doctor or patient would find important and worthy of comment or treatment;

6  the presence of a medical condition that significantly affects an individual's daily

7  activities; or the existence of chronic and substantial pain."  *Colwell*, 763 F.3d at 1066

8  (internal quotation omitted).

9  Second, the subjective element considers the defendant's state of mind, the

10  extent of care provided, and whether the plaintiff was harmed.  "Prison officials are

11  deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or

12  intentionally interfere with medical treatment."  *Hallett v. Morgan,* 296 F.3d 732, 744 (9th

13  Cir. 2002) (internal quotation omitted).  However, a prison official may only be held liable

14  if he or she "knows of and disregards an excessive risk to inmate health and safety."

15  *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004).  The defendant prison official

16  must therefore have actual knowledge from which he or she can infer that a substantial

17  risk of harm exists, and also make that inference.  *Colwell*, 763 F.3d at 1066.  An

18  accidental or inadvertent failure to provide adequate care is not enough to impose

19  liability.  *Estelle*, 429 U.S. at 105–06.  Rather, the standard lies "somewhere between the

20  poles of negligence at one end and purpose or knowledge at the other . . .."  *Farmer v.*

21  *Brennan*, 511 U.S. 825, 836 (1994).  Accordingly, the defendants' conduct must consist

22  of "more than ordinary lack of due care."  *Id.* at 835 (internal quotation omitted).

23  Defendants move for summary judgment as to this claim by arguing there is no

24  support for Anderson's contention that the abscesses had led to blood poisoning and

25  injury to Anderson's heart and breathing, and there is no support for Anderson's

26  contention that he was denied medical care for 5 days.  (ECF No. 208 at 22-25.)

27  Anderson's medical kites reveal that he originally kited complaining of sensitivity

28  in his lower left molar on January 14, 2017.  (ECF No. 208-12.)  Three days later, on

1   January 17, 2017, Anderson sent another kite, this time complaining of pain and swelling
2   on the upper left side of his face.  (ECF No. 208-12.)  Anderson's kite states he was
3   seen by dental that same day and had two teeth extracted.  (*Id.* at 2.)  Anderson did not
4   file any subsequent kites regarding the dental issues.  (*See* ECF No. 208-10.)
5   Anderson's dental records also show that he was seen and treated for the issues
6   complained of in his medical kites on January 17, 2017.  (ECF No. 210-2 at 2.)
7   Additionally, Anderson's medical records do not show that he suffered blood poisoning
8   or injury to his heart or breathing.  (*See* ECF No. 210-1.)

9       In support of the motion for summary judgment, LCC Dentist, Dr. Yup submitted a
10  declaration, which states the following: Anderson has a history of dental problems, for
11  which she has treated since 2016.  (*See* ECF No. 208-10.)  Anderson kited on January
12  14, 2017 complaining of sensitivity in his lower left premolar and asking for a dental
13  appointment.  (*Id.*)  Dr. Yup was not working that day, as it was a Saturday.[8]  (*Id.*)  On
14  January 17, 2017, Dr. Yup returned to work.  (*Id.*)  Anderson kited again on January 17,
15  2017, this time complaining of pain and swelling on the upper left side of his face.  (*Id.*)
16  That same day, Dr. Yup treated Anderson for multiple dental issues.  (*Id.*)  Anderson was
17  treated for tooth #20, which was completely broken off, but not abscessed and it was
18  extracted because it was not salvageable and not restorable.  (*Id.*)  Anderson was also
19  treated for tooth #10, which was infected and the reason for his upper facial swelling
20  reported in his January 17, 2017 kite.  (*Id.*)  That tooth was also extracted because it was
21  abscessed.  (*Id.*)  Anderson was given a routine course of antibiotics to reduce the
22  swelling and discomfort.  (*Id.*)  He was not treated for septicemia or blood poisoning and
23  no abscesses were lanced during treatment.  (*Id.*)  In Dr. Yup's "dental opinion, to a
24  reasonable degree of dental probability, [Anderson] received appropriate treatment for

25  _____

26  [8]    The court takes judicial notice of the fact that January 14, 2017 was a Saturday.
27  *See* Fed. R. Evid. 201(b); *see also Plotner v. AT&T Corp.*, 224 F.3d 1161, 1167 n.1
    (10th Cir. 2000) (taking judicial notice "of the days of the week upon which the dates at
28  issue fall"); *Fisher v. United States*, 2016 WL 11520616, at *2 (C.D. Cal. Nov. 23, 2016)
    (taking judicial notice that October 16, 2016 was a Sunday).

1
2

his diagnosis.  His non-compliance with proper dental hygiene complicated his care, and lead to the loss of his teeth."  (*Id.* at 3.)

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

In his opposition, Anderson argues that the Defendants knew of his pain and facial swelling and refused to provide him medical treatment.  (ECF No. 219 at 70.) Anderson argues that he suffered for 5 days, lost 2 teeth, experienced breathing problems and had blood poisoning.  (*Id.* at 68.)  Anderson does not provide any medical evidence to support his claims.  Anderson's medical and dental records show that he received prompt care for his dental issues.  (*See* ECF Nos. 208-12, 210-1, 210-2.) Further, Anderson has not shown—nor is there any evidence to support—that he suffered further injury as a result of the 3-day delay in treatment.  *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").  Additionally, while Anderson may have disagreed with the course of treatment (i.e. teeth extraction), "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a §1983 claim." *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). Accordingly, the court recommends that Defendants' motion for summary judgment be granted as to the deliberate indifference to serious medical needs claim.[9]

19

**G. First Amendment – Retaliation (Count II)**

20
21
22
23

Anderson's Count II retaliation claims are based on alleged retaliation when Anderson assisted inmate B. Kamadula with legal work by filing a notice of disciplinary charge and by removing Anderson from his job and preferred housing and based on the finding of guilty for said disciplinary charge.  (ECF No. 23 at 24-26.)

24
25

As discussed above, it is well established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983.  *Rhodes*, 408 F.3d

26
27
28

[9]    Defendants' motion also includes arguments related to personal participation and qualified immunity.  (*See* ECF No. 208 at 24, 29-30.)  Because the court finds that Anderson's Eighth Amendment rights were not violated, it need not address these additional arguments.

at 567; *Brodheim*, 584 F.3d at 1269. "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison*, 668 F.3d at 1114. A retaliation claim has five elements: (1) a state actor took some adverse action against the inmate (2) because of (3) the inmate's protected First Amendment conduct, and that the action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–68. If the plaintiff fails to allege that the retaliation had a chilling effect, he or she may still state a claim by alleging some other harm. *Id.* at 568 n.11.

Anderson's claim, in effect, is arguing that he has a constitutional right to assist another inmate with legal work. This is categorically false. In *Shaw v. Murphy*, 532 U.S. 223 (2001), the United States Supreme Court found that inmates have no constitutional right to assist other inmates with their legal work. The Court specifically held that inmates do not have a special First Amendment right to provide legal advice that enhances the protections otherwise available under *Turner*. *Id.* at 228. The effect of such a right, would be that inmate-to-inmate correspondence that includes legal assistance would receive more First Amendment protection than correspondence without any legal assistance. *Id.*

Because Anderson does not have a constitutional right to assist another inmate, he cannot prove that any actions were taken *because of* his protected conduct. Put simply, Anderson does not possess the constitutional right to assist other inmates with legal work, therefore any actions taken, such as disciplinary charges, could not have been because of protected conduct. Accordingly, the court recommends that Defendants' motion for summary judgment be granted as to the retaliation claims.

### H. Qualified Immunity

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988–89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp.*

1    *v. Halderman*, 465 U.S. 89, 100 (1984)).  State officials who are sued individually may

2    also be protected from civil liability for money damages by the qualified immunity

3    doctrine.  More than a simple defense to liability, the doctrine is "an entitlement not to

4    stand trial or face other burdens of litigation . . ." such as discovery.  *Mitchell v. Forsyth*,

5    472 U.S. 511, 526 (1985).

6         When conducting a qualified immunity analysis, the court asks "(1) whether the

7    official violated a constitutional right and (2) whether the constitutional right was clearly

8    established."  *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson*

9    *v. Callahan*, 555 U.S. 223, 232, 236 (2009)).  A right is clearly established if it would be

10   clear to a reasonable official in the defendant's position that his conduct in the given

11   situation was constitutionally infirm.  *Anderson v. Creighton,* 483 U.S. 635, 639–40,

12   (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012).  The court may

13   analyze the elements of the test in whatever order is appropriate under the

14   circumstances of the case.  *Pearson*, 555 U.S. at 240–42.

15        "[J]udges of the district courts… should be permitted to exercise their sound

16   discretion in deciding which of the two prongs of the qualified immunity analysis should

17   be addressed first in light of the circumstances in the particular case at hand."  *Pearson*,

18   555 U.S. at 236.  "[W]hether a constitutional right was violated… is a question of fact."

19   *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009).  While the

20   court decides as a matter of law the "clearly established" prong of the qualified immunity

21   analysis, only the jury can decide the disputed factual issues.  *See Morales v. Fry*, 873

22   F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037

23   (9th Cir. 2018).

24        Defendants do not seem to dispute that the law surrounding free exercise and

25   RLUIPA is "clearly established."  Rather, Defendants seem to contend that Anderson

26   has not adequately alleged that these rights were violated and "the individual

27   Defendants would not have believed their conduct was constitutionally infirm."  (ECF No.

28   208 at 30.)  Because the court finds a genuine issues of material fact exists as to

whether Anderson's constitutional rights were violated, and Defendants do not fully address the "clearly established" prong, the court finds Defendants are not entitled to qualified immunity regarding the First Amendment free exercise or RLUIPA claims, at this time.

## IV.    MOTION FOR LEAVE TO SUPPLEMENT RESPONSE

After the motion for summary judgment was fully briefed, Anderson filed a motion for leave of court to supplement his response.  (*See* ECF No. 224.)  Defendants request that the motion be denied on the ground that the filing is an unauthorized surreply.  (ECF No. 225.)   The local rule governing motions briefing contemplates a motion, an opposition, and a reply, and expressly states that "[s]urreplies are not permitted without leave of court; motions for leave to file a surreply are discouraged."   LR 7-2(b).  Surreplies are appropriate only to address new matters raised in a reply to which a party would otherwise be unable to respond.  *See Kanvick v. City of Reno*, No. 3:06–CV–00058, 2008 WL 873085, at *1, n. 1 (D.Nev. March 27, 2008).  Defendants did not raise new arguments in reply to Anderson's opposition that warrant any additional response.  Accordingly, the court recommends that Anderson's motion (ECF No. 224) be denied.

## V.    MOTION FOR PRELIMINARY INJUNCTION

Finally, pending before the court is Anderson's motion for preliminary injunction. (ECF No. 204.)  Defendants responded, (ECF No. 205), and Anderson replied (ECF No. 206).   Anderson has filed multiple motions for temporary restraining order and preliminary injunction throughout the course of this case.  (*See* ECF Nos. 3, 4, 11, 12, 19, 20, 63.)  The present motion is nearly identical to the prior motions.  (*Compare* ECF No. 204, *with* ECF Nos. 3, 4, 11, 12, 19, 20, 63.)  Because the court already determined that Anderson's request for a preliminary injunction should be denied (*See* ECF Nos. 84, 95), and he has not presented any new evidence or argument that would change that prior decision, the court recommends that the newly filed motion for preliminary injunction (ECF No. 204) be similarly denied.

///

## VI.    CONCLUSION

Based upon the foregoing, the court recommends Defendants' motion for summary judgment (ECF No. 208) be granted, in part, and denied, in part.  The court also recommends that Anderson's motion for leave to supplement (ECF No. 224) be denied.  Finally, the court recommends that Anderson's motion for preliminary injunction (ECF No. 204) be denied.  The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VII.    RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 208) be **GRANTED, IN PART, and DENIED, IN PART.**

**IT IS FURTHER RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 208) be **GRANTED,** as to the following:

- Count I, alleging a Fourteenth Amendment equal protection claim against Defendants Dzurenda, Thomas, Byrne, T. Carpenter, Baze, Stogner, Carrasco, McDaniel, Cox, Foster, Snyder, Wickham, Baker, Baros, and Olivas;
- Count I, alleging a First Amendment free exercise of religion claim against Defendants Dzurenda, Thomas, Cox, Foster, McDaniel, Wickham, and Byrne;
- Count I, alleging a First Amendment retaliation claim against Dzurenda, Thomas, Walsh, Gorsline, Baker, Baros, Byrne, T. Carpenter, Baze, Carrasco, Stogner, McDaniel, Cox, Foster, Feather, and Olivas;

- Count I, alleging a Fourteenth Amendment access to courts claim against Defendants Dzurenda, Thomas, Walsh, Gorsline, Byrne, T. Carpenter, Baze, Carrasco, Stogner, McDaniel, Cox, Foster, and Olivas;

- Count I, alleging a First Amendment free exercise of religion violation against Defendants Dzurenda, Thomas, and Wickham;

- Count II, alleging an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Aranas, Adamson, Yup, Hultenschmidt, Hegge, Donnelly, Austin, Feather, Carpenter, Terrance, Kablitz, Martucci, and Lima-Hernandez;

- Count II, alleging a First Amendment retaliation claim against Defendants Carr, Sandie, Bautista, Olivas, Filorio, Garret, T. Carpenter, D. Carpenter, Baker, Baze, Dzurenda, Thomas, Cordova, Wickham, and Feil; and

- Count II, alleging a First Amendment retaliation claim, based on Anderson being found guilty of a disciplinary charge, against Defendants D. Carpenter, Baker, Thomas, and Dzurenda.

**IT IS FURTHER RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 208) be **DENIED,** as to the following:

- Count I, alleging a First Amendment free exercise of religion claim against Defendants Walsh, Gorsline, T. Carpenter, Baze, Carrasco, Stogner, Feather, Olivas, Snyder, Baker, and Baros;

- Count I, alleging a First Amendment free exercise of religion violation against Defendants Baker, T. Carpenter, Chandler, Snyder, and Davis; and

- Count I, alleging a Religious Land Use and Institutionalized Persons Act violation against Defendants Dzurenda, Thomas, Baker, T. Carpenter, Chandler, Snyder, Wickham, and Davis.

**IT IS FURTHER RECOMMENDED** that Defendants Kim Adamson, Romeo Aranas, Veronica Austin,  Francisco Bautista, Quentin Byrne, David Carpenter, Ian Carr, Nichole Cordova, James "Greg" Cox, Russell Donnelly, Pamela Feil, Gilberto Filorio-

Ramirez, Sheryl Foster, Tim Garrett, Katherine Hegge, Desiree Hultenschmidt, William Kablitz, Walter Lima-Hernandez, Dominick Martucci, E.K. McDaniel, William Sandie, Roger Terrance, and Catherine Yup be **DISMISSED** from this action;

**IT IS FURTHER RECOMMENDED** that Anderson's motion for leave to supplement (ECF No. 224) be **DENIED**; and,

**IT IS FURTHER RECOMMENDED** that Anderson's motion for preliminary injunction (ECF No. 204) be **DENIED**.

**DATED**: __April 15, 2021__

_____
**UNITED STATES MAGISTRATE JUDGE**