1
2
3                    UNITED STATES DISTRICT COURT
4                         DISTRICT OF NEVADA
5                               * * *
6    JOSEPH M. ANDERSON,                    Case No. 3:18-cv-00426-MMD-CLB
7                         Plaintiff,                   ORDER
8          v.
9    JAMES DZURENDA, *et al.*,
10                        Defendants.
11
12   **I.    SUMMARY**
13          *Pro se* Plaintiff Joseph M. Anderson brings this action under 42 U.S.C. § 1983.
14   Before the Court is a Report and Recommendation ("R&R") of United States Magistrate
15   Judge Carla Baldwin (ECF No. 226), recommending the Court grant in part and deny in
16   part Defendants' motion for summary judgment (ECF No. 208 ("Motion")), and deny both
17   Anderson's motion for a preliminary injunction (ECF No. 204) and Anderson's motion for
18   leave to supplement his response (ECF No. 224). Also before the Court is Anderson's
19   motion for appointment of counsel. (ECF No. 229.) Anderson filed a partial objection to
20   the R&R. (ECF No. 227 ("Objection").) As further explained below, the Court will adopt in
21   part and deny in part the R&R and overrule in part Anderson's Objection. Anderson failed
22   to satisfy the subjective prong of his Eighth Amendment deliberate indifference claim and
23   failed to present a valid reason for the Court to reconsider its prior preliminary injunction
24   ruling. However, it would be inappropriate to dismiss Defendant Thomas from the case at
25   this time due to his potentially sufficient personal participation in the alleged First
26   Amendment violations, and inappropriate to dismiss Defendants Wickham, Byrne, and
27   Thomas because they can appropriately respond to Anderson's requested injunctive
28

relief. The Court will also deny Anderson's motion for appointment of counsel because he has not demonstrated exceptional circumstances.

## II.    BACKGROUND

The Court incorporates by reference and adopts the background Judge Baldwin provided in the R&R and does not restate that background here. (ECF No. 226 at 2-6.)

## III.    LEGAL STANDARD

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party fails to object to a magistrate judge's recommendation, the Court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). The Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72, Advisory Committee Notes (1983). Where a party timely objects to a magistrate judge's report and recommendation, then the Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1)*.* The Court's review is thus de novo because Anderson filed his Objection. (ECF No. 227.)

## IV.    DISCUSSION

The Court first addresses Anderson's arguments in his Objection regarding his Eighth Amendment deliberate indifference claim, motion for preliminary injunction, and First Amendment free exercise of religion claim against three Defendants. The Court then addresses Anderson's motion for appointment of counsel. As to the remaining portions of the R&R that Anderson did not object to, the Court finds that Judge Baldwin did not clearly err.

### A.    Eighth Amendment Deliberate Indifference Claim

To start, Anderson objects to Judge Baldwin's recommendation that the Court grant Defendants' Motion as to Anderson's Eighth Amendment deliberate indifference to

serious medical needs claim (Count II).[1] (ECF Nos. 226 at 27, 227 at 12-13.) In their Motion, Defendants argue that they were not deliberately indifferent to Anderson's medical needs because he was appropriately treated by a dentist as soon as one became available, the treatment delay caused some discomfort but did not lead to any additional injuries, and the circumstances regarding Anderson's dental care amounted to a disagreement as to proper medical care at most. (ECF No. 208 at 23-25.) In the R&R, Judge Baldwin agreed with Defendants, finding that there was no evidentiary support for Anderson's claim that further injury resulted from the slight delay between the time he requested dental care and received it. (ECF No. 226 at 22.) Anderson objected to Judge Baldwin's recommendation and contends that Defendants were deliberately indifferent because they ignored his requests for medical assistance regarding his tooth infection. (ECF No. 227 at 12-13.) Anderson claims that the five-day treatment delay of tooth #20 led to further injury including severe pain, swelling, and the loss of two teeth (tooth #20 and tooth #10). (*Id.* at 12.) The Court agrees with Judge Baldwin's conclusion and overrules Anderson's Objection as to this issue.

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency[.]' " *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citations omitted). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To satisfy the subjective prong of the test, the prison official must be "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

---

[1]Anderson brought the Eighth Amendment claim against Defendants Aranas, Adamson, Yup, Hultenschmidt, Hegge, Donnelly, Austin, Feather, Carpenter, Terrance, Kablitz, Martucci, and Lima-Hernandez. (ECF Nos. 23 at 22, 226 at 27.)

exists… [and] also draw the inference." *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (citing *Farmer*, 511 U.S. at 837). Further, the prison official is not liable if he knew of the substantial risk and acted reasonably, which is contingent on the circumstances that "normally constrain what actions a state official can take." *Peralta*, 744 F.3d at 1082 (citing *Farmer*, 511 U.S. at 844). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Moreover, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment" is insufficient. *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citations omitted). Instead, the plaintiff must show that the treatment course "was medically unacceptable under the circumstances" and chosen "in conscious disregard of an excessive risk to plaintiff's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta*, 744 F.3d 1076).

The Court assumes without deciding that Anderson has established a serious medical need with his allegations of a tooth infection and has thus met the objective prong of the Eighth Amendment deliberate indifference analysis. However, he fails to meet the subjective prong. First, and contrary to the argument expressed in Anderson's Objection, the Court finds that Defendants proceeded reasonably under the circumstances and did not act with deliberate indifference. *See Peralta*, 744 F.3d at 1082. Officers Kablitz and Martucci tried to get Anderson medical assistance but were informed by the prison that Anderson had to wait until January 17, 2017, because a dentist was not available. (ECF Nos. 23 at 23, 208-19 at 17.) Also, Anderson's medical kites from January 13, 2017 and January 14, 2017 only document some pain and tooth sensitivity to cold/heat—there were no reports of facial swelling and the inability to eat or sleep. (ECF Nos. 208-12 at 3, 219 at 546.) These documented symptoms would not signal to prison officers that a substantial risk of harm existed. Normally, and reasonably, the prison dental department does not classify dental pain as an emergency. (ECF No. 208-19 at 5.) Around January

16, 2017, when Anderson's symptoms progressed, he was seen by a dentist the next day. (ECF Nos. 23 at 23-24, 208-10 at 2.) Hence, Anderson fails to demonstrate that Defendants had the requisite knowledge under *Peralta*, which requires they knew of facts sufficient to infer a substantial risk of harm and actually drew the inference. *See* 744 F.3d at 1086 (citing *Farmer*, 511 U.S. at 837). Moreover, the undisputed records show that Defendants proceeded reasonably under the circumstances. *See Peralta*, 744 F.3d at 1082.

Next, Anderson has failed to demonstrate that the treatment delay he experienced led to any additional harm. *See Shapley*, 766 F.2d at 407. Notably, the records do not support Anderson's claim that his two teeth would have been salvageable if he was seen earlier. (ECF No. 23 at 24.) First, Dr. Catherine Yup, the prison dentist who treated Anderson, testified that tooth #20 (the tooth Anderson initially complained of in his January 13 and 14 kites) was completely broken off and unsalvageable. (ECF No. 208-10 at 2.) She then testified that the removal of the second tooth (tooth #10) was not caused by the treatment delay of tooth #20. (*Id*.) She stated that the issues in the two teeth were separate and "totally unrelated" and the removal of tooth #10 was due to an infection caused by an abscess. (*Id*.) Second, Anderson suffers from a history of dental issues and Dr. Yup believes Anderson's "non-compliance with proper dental hygiene," not the treatment delay, led to dental decay. (*Id*. at 3.) Indeed, in his January 14, 2017 kite, Anderson himself asked prison staff to "please schedule me for this overdue extraction," suggesting that he already anticipated tooth removal. (ECF No. 208-12 at 3.) Moreover, Anderson's medical records do not indicate any medical or dental complications linked to his January 17, 2017 teeth extractions. (ECF Nos. 210-1, 210-2, 208-10 at 3.) And while his medical records document complaints of palpitations and EKGs done in 2018, a year after his initial dental procedure, nothing links these complaints to his 2017 teeth extractions. (ECF No. 219 at 633.)

Anderson's Eighth Amendment claim, reiterated in his Objection, essentially amounts to a difference of medical opinion, which is insufficient to show deliberate

1   indifference. *See Toguchi*, 391 F.3d at 1058. For example, while Anderson believes the

2   challenged teeth extractions were unnecessary and preventable, his dentist, Dr. Yup,

3   concluded that his teeth were "non-restorable and non-salvageable," and extraction was

4   the only option under prison policy. (ECF No. 208-10 at 2-3.) She noted that one of

5   Anderson's teeth (tooth #20) was "completely broken off" and the other (tooth #10)

6   abscessed—and "[t]he only treatment option for abscessed premolars and molars in the

7   NDOC [Nevada Department of Corrections] system is to extract." (*Id.*) This is reasonable

8   and reflects her judgment as a NDOC dentist. Hence, Anderson failed to show that the

9   treatment course Dr. Yup pursued was "medically unacceptable" and "in conscious

10  disregard of an excessive risk to [his] health" since Dr. Yup provided valid, medically

11  sound reasons for the chosen treatment plan. *See Toguchi*, 391 F.3d at 1058.

12      In sum, Anderson's Objection to the Eighth Amendment claim is overruled because

13  the evidence shows he cannot meet the subjective standard. The Court adopts the R&R

14  in full as to Anderson's Eighth Amendment deliberate indifference claim and grants

15  Defendants' Motion as to this claim.

16              **B.    Motion for Preliminary Injunction**

17      Anderson next objects to Judge Baldwin's recommendation that the Court deny

18  Anderson's motion for preliminary injunction because it is nearly identical to his prior

19  motion for preliminary injunction. (ECF No. 226 at 25.) Anderson seeks injunctive relief

20  under the First Amendment to engage in Wiccan religious ceremonies and gain access

21  to certain religious items for Wiccan rituals. (ECF No. 204 at 3-5, 39.) As Judge Baldwin

22  noted, Anderson's pending motion for a preliminary injunction is very similar to one he

23  already filed. (ECF No. 226 at 25.) The Court therefore construes Anderson's motion for

24  preliminary injunction (ECF No. 204)—and corresponding Objection to Judge Baldwin's

25  Recommendation—as a motion to reconsider because it raises issues that the Court has

26  already ruled on in a prior order (ECF No. 95).

27      "A preliminary injunction is an extraordinary remedy never awarded as of right."

28  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). But the

1   Court may issue a preliminary injunction if Plaintiff establishes: (1) likelihood of success

2   on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3)

3   that the balance of equities tips in his favor; and (4) that an injunction is in the public

4   interest. *See id.* at 20.

5         Motions to reconsider are generally left to the discretion of the district court and

6   must set forth "some valid reason why the court should reconsider its prior decision" and

7   "facts or law of a strongly convincing nature to persuade the court to reverse its prior

8   decision." *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003) (citation

9   omitted). Reconsideration is appropriate if this Court "(1) is presented with newly

10  discovered evidence, (2) committed clear error or the initial decision was manifestly

11  unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v.*

12  *ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (citation omitted). But "[a] motion for

13  reconsideration is not an avenue to re-litigate the same issues and arguments upon which

14  the court already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288

15  (D. Nev. 2005) (citation omitted).

16        In a prior order on a nearly identical motion, the Court denied one part of

17  Anderson's First Amendment free exercise of religion claim regarding access to certain

18  religious items. (ECF Nos. 84 at 6-11, 95 at 1-2.) The previous order did not explicitly

19  address the second part of Anderson's First Amendment claim regarding his ability to

20  engage in certain religious ceremonies. (ECF Nos. 19 at 4-5, 13-14, 204 at 3.) In his

21  current motion for preliminary injunction, Anderson seeks permission to engage in several

22  Wiccan rituals including the Full Moon Esbat and daily devotionals at sunrise and sunset.

23  (ECF No. 204 at 3.) But in his most recent motion for a preliminary injunction, Anderson

24  merely reiterates arguments from his prior motion and has not presented any new

25  evidence, a change in controlling law, or shown that the Court's prior decision was clearly

26  erroneous or unjust. *See Sch. Dist. No. 1J*, 5 F.3d at 1263. Hence, reconsideration is not

27  appropriate here. *See id*.

28        Alternatively, Anderson has not shown entitlement to the extraordinary remedy of

preliminary injunctive relief permitting him to engage in certain Wiccan rituals. In its prior order, the Court denied a very similar preliminary injunction motion regarding access to religious items because Anderson failed to meet the *Winter* factors. *See* 555 U.S. at 20. First, the Court previously found that Anderson failed to show he was likely to succeed on the merits because he did not explain how NDOC's prohibitions of certain religious items substantially burdened his exercise of religion. (ECF No. 84 at 7.) Similarly, here, Anderson has not shown a substantial burden on his religious practice, particularly since he is still allowed to carry out Wiccan rituals and ceremonies on designated days and times. (ECF Nos. 205 at 6, 205-2 at 4.) Second, the Court previously found the absence of irreparable injury because Anderson has not shown a likelihood of success on the merits. (ECF No. 84 at 10.) Here, the Court finds Anderson fails to meet the irreparable harm element for the same reason. Third, the Court previously held that the balance of equities weighs in favor of Defendants because they have an interest in maintaining order, security, and discipline in NDOC facilities. (ECF No. 84 at 10-11.) Similarly, here, Defendants present compelling security and administrative reasons for allowing religious ceremonies for earth-based religions one day a week and only between certain hours of the day. (ECF Nos. 205 at 6, 205-2 at 4.) The policy allows Defendants to monitor inmates without significantly increasing officers on duty and accommodate the different religious groups on prison grounds. (ECF Nos. 205 at 6, 205-1 at 2.) Hence, the balance of equities weighs in favor of Defendants. Finally, the Court previously found that the public interest is served by maintaining prison security, order, and discipline in NDOC facilities. (ECF No. 84 at 11.) The public interest is served for the same reasons here. Anderson has therefore failed to meet the *Winter* factors for the second part of his First Amendment claim regarding Wiccan ceremonies and rituals.

In sum, the Court will deny Anderson's motion for reconsideration and adopt Judge Baldwin's recommendation. Anderson has not demonstrated a valid reason for the Court to reconsider its prior decision and alternatively, has not met any of the *Winter* factors for the second part of his First Amendment claim.

8

1
2

**C.    First Amendment free exercise of religion claim against Defendants Thomas, Wickham, and Byrne**

3    Finally, Anderson objects to Judge Baldwin's recommendation that the Court

4    dismiss Defendants Thomas, Wickham, and Byrne (Count I) because they knew of and

5    personally participated in the alleged First Amendment violations. (ECF Nos. 226 at 26,

6    227 at 9-11.) In their Motion, Defendants argue that they are entitled to summary

7    judgment on this claim because, as former and/or current NDOC directors or deputy

8    directors, they were not personally involved or aware of Anderson's First Amendment

9    violations regarding denial of religious practices and items. (ECF No. 208 at 12.) In the

10   R&R, Judge Baldwin agreed with Defendants, finding they did not personally participate

11   in Anderson's alleged First Amendment free exercise of religion violations. (ECF No. 226

12   at 13-14.). However, the Court disagrees with Judge Baldwin's Recommendation and will

13   instead sustain Anderson's Objection as to these three Defendants.

14   A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal

15   participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation

16   omitted). A person deprives another "of a constitutional right, within the meaning of

17   section 1983, if he does an affirmative act, participates in another's affirmative acts, or

18   omits to perform an act which he is legally required to do that *causes* the deprivation of

19   which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988)

20   (emphasis in original, citation omitted). "Because vicarious liability is inapplicable to

21   Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant,

22   through the official's own individual actions, has violated the Constitution." *Ashcroft v.

23   Iqbal*, 556 U.S. 662, 676 (2009). "A supervisor is only liable for constitutional violations of

24   his subordinates if the supervisor participated in or directed the violations, or knew of the

25   violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045. Where the

26   defendant's only involvement in the allegedly unconstitutional conduct is "the denial of

27   administrative grievances or the failure to act, the defendant cannot be liable under §

28   1983." *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1157 (E.D. Wash. 2014) (quoting

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Jackson v. State of Nev.*, Case No. 2:16-cv-00995-APG-NJK, 2019 WL 6499106, at *7 (D. Nev. Dec. 3, 2019) ("[C]ourts have held that merely denying a grievance without some decision-making authority or ability to resolve the underlying issue grieved is not enough to establish personal participation."). However, the Court may find liability if Plaintiff shows that Defendants "through their individual actions" violated the constitution, "caused the alleged constitutional violation," or did something more than "simply respond to his grievances." *Gates v. LeGrand*, Case No. 3:16-cv-00321-MMD-CLB, 2020 WL 3867200, at *5 (D. Nev. Mar. 27, 2020); *see also Snow*, 681 F.3d at 989, *overruled on other grounds by Peralta*, 744 F.3d 1076 (9th Cir. 2012) (finding it sufficient to deny summary judgment because the warden and associate warden had individually reviewed an order that the plaintiff required a hip replacement, "were aware of [plaintiff's] serious hip condition," and "failed to prevent further harm."). Moreover, in a § 1983 suit for injunctive relief, a plaintiff "is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) (citing *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013)).

The Court rejects Judge Baldwin's recommendation regarding Wickham, Thomas, and Byrne for the following reasons. First, the Court finds that there are still questions of material fact as to Defendant Thomas's personal participation in allegedly denying Anderson's requests for religious items and to engage in certain ceremonies under the First Amendment. In his Objection, Anderson cited four separate grievances assigned to Thomas that he personally responded to and signed. (ECF No. 227 at 9-10 (citing ECF Nos. 204-3 at 139, 160, 190, 204-4 at 87).) Thomas's comprehensive grievance responses indicate that he served as a liaison of sorts between Anderson and the Religious Review Team ("RRT"), who examined Anderson's grievances, and individually

reviewed the grievances himself. (ECF Nos. 204-3 at 139, 160, 190, 204-4 at 87.) It is unclear whether Thomas, as deputy director of the NDOC, had any influence over the RRT's decisions. Nevertheless, the extent of Thomas's personal participation appears to be more than merely denying Anderson's grievances and his actions are sufficient to pose a question of material fact as to his personal involvement. *See Snow*, 681 F.3d at 989; *Gates*, 2020 WL 3867200, at *5. Moreover, the Court finds Defendants' argument that there is no evidence that Thomas was aware of Anderson's alleged First Amendment violations unconvincing. (ECF Nos. 208 at 12, 228 at 6-7.) In *Snow*, the Ninth Circuit denied summary judgment based on lack of personal participation because the warden and associate warden "were aware of [plaintiff's] serious hip condition" and "failed to prevent further harm." *See* 681 F.3d at 989. The grievances Thomas reviewed pertain to core issues in Anderson's First Amendment religious exercise claim, including the denial of Wiccan religious practices and items. (ECF Nos. 204-3 at 159, 189, 204-4 at 85.) Like in *Snow*, Anderson has sufficiently shown that Thomas was at least aware of the problems and material factual issues accordingly exist as to his personal participation in the alleged First Amendment violations. *See* 681 F.3d at 989.

As to Byrne, Anderson argues that he personally participated in his alleged First Amendment violations by citing to two grievances that Byrne reviewed. (ECF Nos. 204-3 at 135, 219 at 150.) The first grievance, from 2015, did not specifically relate to Anderson's First Amendment claim about denial of religious practices and items; it was about lost RRT forms. (ECF No. 204-3 at 135.) The second grievance, from 2016, did pertain to access to Wiccan religious items. (ECF No. 219 at 150.) However, because Byrne's only involvement was denying the grievance and adding his signature to the bottom of the form, the record does not support that Byrne personally participated in the alleged First Amendment violation. *See Shehee*, 199 F.3d at 300; *Jackson*, 2019 WL 6499106, at *7.

Finally, Anderson claims that Defendant Wickham, as the deputy director and a RRT member, actively participated in and failed to remedy the alleged First Amendment

11

1   violation by refusing to approve certain Wiccan practices and items. (ECF No. 227 at 10.)

2   The record does not support personal participation by Wickham. Wickham testifies that

3   he "did not answer the grievances of which Plaintiff complains in this action" and only

4   responded to an unrelated grievance regarding a disciplinary appeal. (ECF No. 208-1 at

5   3.) But he broadly admits that he was a member of the RRT, and that he consulted with

6   other members about Wiccan religious items, without admitting to any direct participation

7   in Anderson's grievances. (ECF No. 204-5 at 106-107.) Further, Wickham states that he

8   "does not have specific authority in the function of the Religious Review Team." (ECF No.

9   204-5 at 107-108.) His primary role as deputy director is to review and create policies,

10  rather than directly implementing them. (ECF Nos. 204-5 at 107, 208-1 at 3, 208-2 at 2.)

11  Hence, his general familiarity with Anderson's circumstances or less, as indicated here,

12  does not show Wickham personally participated in the alleged First Amendment

13  violations, such that he could be held liable for them. *See May v. Williams*, Case No. 2:10-

14  CV-576-GMN-LRL, 2012 WL 1155390, at *3 (D. Nev. Apr. 4, 2012) (citing *Crowder v.*

15  *Lash*, 687 F.2d 996, 1005-1006 (7th Cir. 1982)).

16  However, even if there was no personal participation by Wickham and Byrne, all

17  three Defendants should remain in this action due to their current roles as deputy directors

18  of the NDOC.[2] Since Anderson is seeking injunctive relief, he does not need to allege

19  Defendants' personal involvement in the First Amendment violation. Anderson only needs

20  to identify the prison policy that violates the constitution and name the official that can

21  "ensur[e] that injunctive relief [is] carried out, even if he was not personally involved in the

22  decision giving rise to [Anderson's] claims." *Colwell*, 763 F.3d at 1070 (quoting *Pouncil v.*

23  *Tilton*, 704 F.3d 568, 576 (9th Cir. 2012)). Here, Anderson has identified NDOC policies

24

25      [2]It is unclear whether Defendants Wickham, Byrne, and Thomas are still employed
    as NDOC deputy directors. Defendants broadly refer to Wickham, Byrne and Thomas as
26  "current and/or former Directors or Deputy Directors of the NDOC" in their Motion for
    Summary Judgment and other filings, without specifying which Defendants are current
27  employees and which Defendants are former employees. (ECF Nos. 208 at 12, 228 at 6.)
    In Anderson's amended complaint, he describes all three Defendants as deputy directors.
28  (ECF No. 23 at 2-3.) Hence, the Court will assume Wickham, Byrne, and Thomas are
    current deputy directors unless and until Defendants can later establish otherwise.

that prevent him from practicing certain Wiccan rituals and accessing religious items necessary for those rituals. (ECF No. 23 at 16-23.) Anderson has named three Defendants who can appropriately respond to his request for injunctive relief because they are deputy directors of the NDOC.[3] Although wardens are responsible for implementing institutional procedures, the directors and deputy directors of the NDOC "formulate policies and regulations as required by the Nevada Revised Statutes" and "review policies in accordance with established regulations." (ECF Nos. 208-1 at 3, 208-2 at 2, 204-5 at 107.) According to Wickham, the deputy directors, wardens, designees, and chaplains are "responsible for the practice of Religious and Faith Group services in the NDOC." (ECF No. 204-5 at 105.) Because Wickham, Byrne, and Thomas are responsible for creating the very NDOC policies that Anderson objects to, they are in the proper position to grant Anderson injunctive relief. Thus, Wickham, Byrne, and Thomas are appropriate Defendants in this § 1983 case and should not be dismissed.[4]

In sum, the Court declines to adopt Judge Baldwin's recommendation to dismiss Wickham, Byrne, and Thomas because questions of material fact remain regarding Thomas's personal participation in Anderson's alleged First Amendment violations for denial of access to religious items and the freedom to engage in certain ceremonies. Further, the Court finds that all three Defendants should remain in this case for injunctive relief because they can appropriately respond to Anderson's requested injunctive relief as NDOC deputy directors.

### D. Motion for Appointment of Counsel

There is no constitutional right to appointed counsel in a § 1983 action. *See, e.g.*, *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *opinion reinstated in pertinent part*, 154 F.3d 952, 954 n.1 (9th Cir. 1998) (en banc). While the decision to request counsel lies within the discretion of the district court, the Court may exercise its discretion

---

[4]Since the legal standard from *Colwell* only applies to injunctive relief, Defendants can still argue that Wickham and Byrne did not personally participate in Anderson's alleged constitutional violations to the extent Anderson seeks monetary damages against them.

1    to request counsel only under "exceptional circumstances." *Terrell v. Brewer*, 935 F.2d

2    1015, 1017 (9th Cir. 1991). "A finding of exceptional circumstances requires an evaluation

3    of both the likelihood of success on the merits and [the plaintiff's ability to] articulate his

4    claims *pro se* in light of the complexity of the legal issues involved." *Id*. (quoting *Wilborn*

5    *v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)) (internal quotation marks omitted).

6    　　　　Exceptional circumstances do not exist here. The Court finds that Anderson is

7    capable of articulating his claims in light of the legal complexities of the case. *See Terrell*,

8    935 F.2d at 1017. Anderson argues that as a *pro se* litigant with limited legal education

9    and access to the prison law library, he will need legal assistance in conducting further

10    investigations into Defendants' involvement in the alleged constitutional violations,

11    addressing conflicting testimony and credibility issues in the case, presenting evidence

12    and expert testimony at trial, and cross-examining witnesses. (ECF Nos. 229 at 1-2, 6-7,

13    231 at 6.) However, these circumstances are unexceptional compared to most prisoner

14    civil rights cases. Anderson also presents his claims in a clear and well-organized manner

15    in his motion, and the remaining First Amendment and RLUIPA ("Religious Land Use and

16    Institutionalized Persons Act") claims in this case do not appear to be particularly

17    complex. Moreover, Anderson's ability to compose multiple well-articulated motions and

18    responses in this case, some of which the Court either agreed with or granted,

19    demonstrates Anderson's ability to fairly present his claims without the assistance of

20    counsel. Therefore, the Court finds that appointment of counsel is not justified here, and

21    Anderson's motion is denied.

22    **V.    CONCLUSION**

23    　　　　The Court notes that the parties made several arguments and cited to several

24    cases not discussed above. The Court has reviewed these arguments and cases and

25    determines that they do not warrant discussion as they do not affect the outcome of the

26    issues before the Court.

27    　　　　It is therefore ordered that Anderson's Objection (ECF No. 227) to the Report and

28    Recommendation of U.S. Magistrate Judge Carla Baldwin is overruled in part, and

14

sustained in part, as explained herein. The Report and Recommendation of United States Magistrate Judge Carla L. Baldwin (ECF No. 226) is similarly accepted in part and rejected in part as also described herein.

It is further ordered that Defendants' motion for summary judgment (ECF No. 208) is granted in part and denied in part as further explained both herein and below. The Motion is granted as to the following claims:

1. Count I, alleging a Fourteenth Amendment equal protection claim against Defendants Dzurenda, Thomas, Byrne, T. Carpenter, Baze, Stagner, Carrasco, McDaniel, Cox, Foster, Snyder, Wickham, Baker, Baros, and Olivas;

2. Count I, alleging a First Amendment free exercise of religion claim against Defendants Dzurenda, Cox, Foster, and McDaniel;

3. Count I, alleging a First Amendment retaliation claim against Dzurenda, Thomas, Walsh, Gorsline, Baker, Baros, Byrne, T. Carpenter, Baze, Carrasco, Stagner, McDaniel, Cox, Foster, Feather, and Olivas;

4. Count I, alleging a Fourteenth Amendment access to the courts claim against Defendants Dzurenda, Thomas, Walsh, Gorsline, Byrne, T. Carpenter, Baze, Carrasco, Stagner, McDaniel, Cox, Foster, and Olivas;

5. Count II, alleging an Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Aranas, Adamson, Yup, Hultenschmidt, Hegge, Donnelly, Austin, Feather, Carpenter, Terrance, Kablitz, Martucci, and Lima-Hernandez;

6. Count II, alleging a First Amendment retaliation claim against Defendants Carr, Sandie, Bautista, Olivas, Filorio, Garret, T. Carpenter, D. Carpenter, Baker, Baze, Dzurenda, Thomas, Cordova, Wickham, and Feil; and

7. Count II, alleging a First Amendment retaliation claim, based on Anderson being found guilty of a disciplinary charge, against Defendants D. Carpenter, Baker, Thomas, and Dzurenda.

Defendants' motion for summary judgment (ECF No. 208) is denied as to the

15

following claims:

1. Count I, alleging a First Amendment free exercise of religion claim against Defendants Wickham, Thomas, Byrne, Walsh, Gorsline, T. Carpenter, Baze, Carrasco, Stagner, Feather, Olivas, Snyder, Baker, Baros, Chandler, Synder, and Davis; and

2. Count I, alleging a Religious Land Use and Institutionalized Persons Act violation against Defendants Dzurenda, Thomas, Baker, T. Carpenter, Chandler, Snyder, Wickham, and Davis.

It is further ordered that Defendants Kim Adamson, Romeo Aranas, Veronica Austin, Francisco Bautista, David Carpenter, Ian Carr, Nichole Cordova, James "Greg" Cox, Russell Donnelly, Pamela Feil, Gilberto Filorio-Ramirez, Sheryl Foster, Tim Garrett, Katherine Hegge, Desiree Hultenschmidt, William Kablitz, Walter Lima-Hernandez, Dominick Martucci, E.K. McDaniel, William Sandie, Roger Terrance, and Catherine Yup are dismissed from this action.

It is further ordered that Anderson's motion for leave to supplement his response (ECF No. 224) is denied.

It is further ordered that Anderson's motion for preliminary injunction (ECF No. 204) is denied.

It is further ordered that Anderson's motion for appointment of counsel (ECF No. 229) is denied.

DATED THIS 14th Day of September 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE